COURT OF APPEALS
DECISION
DATED AND FILED

April 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2122-CR**

Cir. Ct. No. **2020CM190**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KIMBERLY D. ROWE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Lincoln County: ROBERT R. RUSSELL, Judge. *Reversed.*

¶1 STARK, P.J.[1] Kimberly D. Rowe appeals from a judgment, entered upon a jury's verdict, convicting her of one count of misdemeanor possessing, with the intent to sell, intoxicating liquor without a license or permit, in violation

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

of WIS. STAT. § 125.66(1).[2] Rowe argues that the evidence the State presented at her trial was insufficient to prove beyond a reasonable doubt that she possessed intoxicating liquor. For the reasons that follow, we agree with Rowe and reverse the judgment of conviction.

## BACKGROUND

¶2 The criminal complaint alleged that on October 14, 2020, Deputy Logan Lange of the Lincoln County Sheriff's Office responded to K&R Raceway Pub (the pub) after receiving a report that minors were being served alcohol. The complaint further alleged that Lange spoke with several people in the pub, and two minors informed him that they had been served "intoxicating liquor"[3] without anyone checking their identification to verify their ages. According to the complaint, Rowe identified herself to Lange "as the bar owner and Lange advised her of the report." Rowe could not present a valid license to sell alcohol.

¶3 Rowe was subsequently charged with selling, or possessing with the intent to sell, an intoxicating liquor without holding the appropriate license or permit, in violation of WIS. STAT. § 125.66(1). The case proceeded to a one-day

---

[2] Although the criminal complaint was drafted and filed in 2020, we note that the relevant statutory language has not changed.

[3] WISCONSIN STAT. § 125.02(8) defines "[i]ntoxicating liquor" as "all ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume [(ABV)], which are beverages, but does not include 'fermented malt beverages.'" Thus, it is undisputed that beer is not included within the definition of an intoxicating liquor. *See* § 125.02(6).

jury trial. The State presented testimony from Lange and the clerk for the Town of Bradley.[4]

¶4      Lange testified about his observations at the pub in October 2020. According to Lange, when he arrived at the pub, it appeared to be open for business based on a sign outside advertising K&R Raceway Pub, a sign in "neon lighting"—later identified as a Budweiser sign—in the window, the lights on inside the building, the vehicles present, and the people located inside. Lange stated that upon entering the building, he noted that there was one person—later identified as Rowe—located on one side of a "long[]," "wooden" "countertop." Behind Rowe, explained Lange, were "liquor bottles standing on a shelving unit of some sort," and there was also a cash register behind the countertop. On the other side of the countertop, Lange noted that "a number of people [were] standing around drinking beverages." During cross-examination, Lange clarified that the individuals in the pub were "holding cans" with "beer labels" on them. Lange stated that when he encountered Rowe, he asked for her operator's license, and Rowe provided him with an operator's license from the Township of Birch and a bartending license. Both licenses were expired.

¶5      Rowe elected to testify in her own defense. According to her testimony, Rowe and her boyfriend live at the pub. She denied selling any intoxicating liquor and described the night in question as a "private get together." She explained that in the pub, there was "a cooler with some beers in it." Rowe also stated that "[t]here were a few alcohol bottles behind the bar but none that I

---

[4] The town clerk testified that according to the licensing records, Rowe did not have a license for the sale or service of alcohol on the date in question.

had, you know, served or anything." Rowe testified that her boyfriend wanted to run a bar out of the pub, that he put up the pub's sign and the neon Budweiser sign, and that he put the "alcohol bottles" behind the countertop. Rowe also stated that she did not know her licenses had expired because "they were in the frame[s]" on the wall.

¶6     After the defense rested, the State sought leave to amend the criminal complaint to conform to the evidence presented. As relevant here, the State sought to "remov[e] the section [of the complaint] about selling alcohol so [the charge] would only be for … possessing alcohol [with] the intent to sell." The circuit court granted that motion. The jury subsequently returned a guilty verdict on the amended count, and the court accepted the verdict and entered judgment accordingly. The court then proceeded directly to sentencing. It imposed a $500 fine plus costs, assessments, and surcharges to be paid within sixty days. Rowe appeals.

## DISCUSSION

¶7     On appeal, Rowe challenges the sufficiency of the evidence to support her conviction. It is beyond dispute that "[t]he burden of proof is upon the [S]tate to prove every essential element of the crime charged beyond reasonable doubt." *State v. Robinson*, 2024 WI App 50, ¶51, 413 Wis. 2d 534, 12 N.W.3d 535 (second alteration in original; citation omitted). Either direct evidence or circumstantial evidence can establish evidence of guilt, and the standard for reviewing the sufficiency of the evidence to support a conviction is the same in either a direct or circumstantial evidence case. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶8      "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review." *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.  When conducting our review, "we consider the evidence in the light most favorable to the State," and we will "reverse the conviction only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'"  *Id.* (quoting *Poellinger*, 153 Wis. 2d at 507).  In other words, we must "decide whether 'any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial.'"  *Id.*, ¶44 (quoting *Poellinger*, 153 Wis. 2d at 506).

¶9      In this case, Rowe's argument focuses on the possession element of the offense.  She asserts that "[t]he State failed to present sufficient evidence to prove that Rowe possessed 'intoxicating liquor.'"  (Formatting altered.)  Rowe contends that whether the bottles located in the pub contained a substance meeting the definition of "intoxicating liquor" "is not within the realm of ordinary experience" from which the jurors could have drawn the required inference, and "[e]ven if it were, there is simply no testimony from Deputy Lange as to alcoholic content, and there are no facts in evidence upon which the jurors could infer such a finding."  In contrast, the State asserts that "[i]t is reasonable for a jury to infer that when an adult refers to a group of labeled beverage bottles as 'liquor' or 'alcohol' it is presumed they intend to mean 'intoxicating liquor' or 'alcoholic beverage,' which includes intoxicating liquors."

¶10     For the reasons that follow, we agree with Rowe and conclude as a matter of law that the evidence the State presented at trial fell short of proving every essential element of the charged crime.  Specifically, the evidence produced

was insufficient for the jury to find that Rowe possessed intoxicating liquor, and we conclude that no trier of fact, acting reasonably, could have drawn the appropriate inferences from the evidence and found Rowe's guilt beyond a reasonable doubt.

¶11 At trial, the most significant testimony regarding intoxicating liquor came from Lange, who testified that "[b]ehind [Rowe] there w[ere] liquor bottles standing on a shelving unit of some sort"; that the bottles "were positioned in a way that if [you were] behind the countertop, that you would be able to read the labels from your position"; and that in Lange's experience, these bottles were "liquor bottles." Rowe also stated during her testimony that there "were a few alcohol bottles behind the bar."

¶12 This testimony was not reliable, probative, or substantial evidence— direct or circumstantial—demonstrating that Rowe possessed intoxicating liquor. First, the State failed to prove the identity of any substances in the "liquor bottles." Lange did not provide any information from the labels on the liquor bottles, which would have established the identity of any substances they contained—i.e., vodka, whiskey, gin, tequila, or liqueurs—and, subsequently, the ABV. In fact, Lange also failed to testify whether the bottles contained any liquid at all. Without support in the record, it was not reasonable for the jurors to infer that the bottles actually had liquor in them. On this record, the bottles could have been entirely empty and used strictly for decoration.

¶13 Second, without any evidence regarding the identity of the liquid in the bottles, if any, the State failed to prove that they contained "ardent, spirituous, distilled or vinous liquors, liquids or compounds" containing "0.5 percent or more of [ABV]," rather than nonalcoholic beverages. *See* WIS. STAT. § 125.02(8).

6

Lange provided no description of the bottles, their labels, or their contents, and given that the bottles were not seized as evidence during the investigation, there was no direct evidence presented that Rowe was in possession of intoxicating liquor.

¶14    As our supreme court has explained, "A jury may draw reasonable inferences from facts established by circumstantial evidence, but it may not indulge in inferences wholly unsupported by any evidence. The inferences must be supported by facts, and the defendant cannot be convicted on mere suspicion or conjecture." *State ex rel. Kanieski v. Gagnon*, 54 Wis. 2d 108, 117, 194 N.W.2d 808 (1972) (footnotes omitted). Based on his testimony, it is clear that Lange merely observed the bottles from afar and made a bare assumption that Rowe possessed intoxicating liquor. However, Lange failed to support his assumption by, for example, examining the labels on the bottles, checking if the seals on the bottles had been broken, opening the bottles to identify whether the substance smelled like an intoxicating liquor, taking a picture of the bottles (as Lange did that evening with the expired operator's license), or entering the bottles into evidence for chemical testing. Further, no witness testified that they observed Rowe using the bottles to serve drinks or that they drank intoxicating liquor served by Rowe.

¶15    Without more, the bare evidence in the record before the jury that Lange saw "liquor bottles" from across the counter is insufficient to support a *reasonable* inference that Rowe possessed intoxicating liquor and suggests that the jury reached its guilty verdict based on facts that were not in the record. Because the State did not present any evidence related to the ABV of any liquid in the bottles, or solicit any additional facts upon which a jury could infer that the type of alcohol in the bottles, if any, met the minimum threshold percentage, we conclude

that the State failed to offer competent evidence of an essential element of the offense of possessing, with the intent to sell, an intoxicating liquor without holding the appropriate license or permit.

¶16    The State asserts, however, that "[c]ircumstantial evidence supports the reasonable inference that the 'liquor' or 'alcohol' were an 'intoxicating liquor.'" (Formatting altered.)  According to the State, "[t]he bottles of liquor were on a shelf; behind Rowe, who was standing in the customary place of a bartender behind the bar; with an invalid server's license displayed in a manner of [a] bar; in a building that had a Budweiser sign and lights displayed and was labeled a 'Pub;' and with Rowe's testimony that her boyfriend intended the pub to be a bar."

¶17    We are not persuaded that this circumstantial evidence provides the necessary inferential support.  First, there is nothing inherently revealing about the bottles being located behind the bar because, as we noted above, the bottles could easily have been used for decorative purposes.  Further, evidence that Rowe and her boyfriend were holding the pub out as a bar merely creates a suspicion that liquor would be for sale at the bar.  There was no other circumstantial evidence in the record suggesting that intoxicating liquor was available for purchase, such as, for example, pour spouts on the bottles, glassware for mixed drinks, shot glasses, drink shakers, mixers, or signs or menus stating that cocktails were available for purchase.[5]  There was also no evidence that any of the guests in the pub were holding cups of liquid.  Instead, Lange testified that "they had cans of what had

---

[5] While not argued on appeal, we also question whether the evidence was sufficient to establish Rowe's *intent to sell* intoxicating liquor where none of this, or similar, evidence was presented.

labels of beer on them." Furthermore, the State's reference to the Budweiser sign outside the pub does not support its argument, considering that Budweiser is a type of beer, which is not an intoxicating liquor under the statute.

¶18 The State further contends that "[o]ne-third of the jury panel indicated a history of involvement in the bartending industry," and the jurors were not expected to set aside their own observations and experiences in reaching the verdict. We concur with the State that "jurors are not restricted to a consideration of the facts directly proven, but may give effect to such inference as reasonably may be drawn from them. Nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life …." *See De Keuster v. Green Bay & W.R. Co.*, 264 Wis. 476, 479, 59 N.W.2d 452 (1953). We do not agree, however, with the State's contention that it is *common knowledge* that liquor contains 0.5 percent or more of ABV.

¶19 In support of its position that a "[s]ubstantial portion of the adult community … reasonably know[s] that" liquor has "a higher than 0.5% ABV," the State spends three pages of its response brief explaining the ABV in different consumable liquids and outlining that "[u]nder the Federal Alcohol Administration Act intoxicating liquors are labeled, clearly stating greater than 0.5% ABV." Additionally, the State cites *Briffitt v. State*, 58 Wis. 39, 16 N.W. 39 (1883), in support of the State's proposition that "[w]hile the definition of intoxicating liquor is specific, this is not a technically [sic] that requires special testimony because the

9

ordinary terms reflect the separation between intoxicating liquor and beverages with nominal amount[s] of trace alcohol."[6]

¶20     The State's arguments do not persuade us that it is *common knowledge* that liquor contains 0.5 percent or more of ABV. Instead, we conclude that the ABV of different intoxicating liquors is beyond the common knowledge of the average juror, especially under a circumstance where the type of liquor is not identified in the record. Simply because the Alcohol Administration Act mandates ABV labeling does not mean that we can assume that a rational juror would have been aware, as common knowledge, of the ABV content of *unidentified* "liquor bottles." In other words, the State presented no evidence that "liquor bottles" means bottles containing liquid with more than 0.5 percent or more of ABV. In terms of the State's reliance on the fact that some of the jurors were in the bartending industry, we do not approve of the State's seeming dependence on jurors sharing their individual expertise with other jurors, rather than calling expert witnesses, in order to prove its case. Therefore, it was not reasonable, without more, for the jurors to infer that Lange's testimony—that he observed "liquor

---

[6] In ***Briffitt v. State***, 58 Wis. 39, 40, 16 N.W. 39 (1883), the issue was "whether proof that the defendant had sold *beer* was sufficient proof that he had sold malt or *intoxicating* liquor." In other words, was "beer" "either malt or intoxicating"? ***Id.*** at 41. Our supreme court concluded that the word "beer" has a commonly accepted meaning of a fermented malt beverage that is intoxicating and, thus, the prosecution had sufficiently proved the elements of the statute when the witnesses testified that the defendant sold them beer. ***Id.*** at 43-44.

This holding does not help the State here because the intoxicating quality of beer is not an element of WIS. STAT. § 125.66(1). Instead, the definition of intoxicating liquor requires proof of a certain proportion of alcohol. *See* WIS. STAT. § 125.02(8). Therefore, while a juror's personal experience with beer would provide him or her with the knowledge or experience needed to determine whether the beverage was malt or intoxicating, the same cannot be said of the reference to "liquor bottles" and whether they specifically contained liquor with 0.5 percent or more of ABV.

bottles"—proved beyond a reasonable doubt that Rowe possessed a substance meeting the statutory definition of an intoxicating liquor.

¶21    Finally, we address the State's argument, in response to Rowe's citation to *Gebaj v. State*, 184 Wis. 289, 199 N.W. 54 (1924), and *Hoch v. State*, 199 Wis. 63, 225 N.W. 191 (1929), regarding the type of evidence required to establish the elements of WIS. STAT. § 125.66(1).  Within her argument, Rowe cites *Gebaj* and *Hoch* for the proposition that "[w]hen the definition of 'intoxicating liquor' specifies a certain percentage of alcoholic content, Wisconsin appellate courts have required the State to present competent evidence of alcoholic content in prosecutions of its unlawful possession and sale."  In *Gebaj v. State*, 184 Wis. 289, 199 N.W. 54 (1924), our supreme court considered the sufficiency of the evidence in a prosecution for the sale of intoxicating liquor.  *Id.* at 289.  The alcohol was seized and subjected to chemical analysis.  *Id.*  The results of the analysis were entered into evidence at trial.  *Id.*  Essentially, the defendant lodged a chain of custody challenge, arguing that the bottles could have been tampered with prior to the analysis.  *Id.* at 290.  The court dismissed this argument as "without merit" and affirmed the verdict.  *Id.*

¶22    In *Hoch v. State*, 199 Wis. 63, 225 N.W. 191 (1929), the question was whether the liquor possessed without a permit was "privately manufactured distilled liquor," also known as moonshine.  *Id.* at 66.  A deputy sheriff "testified that he knew the taste of 'moon'" and that what he drank was "intoxicating liquor."  *Id.*  According to the court, "[i]f it were necessary to sustain the conviction upon this testimony there would be some difficulty in construing it as a sufficient basis for a finding that the liquor constituted privately manufactured distilled liquor."  *Id.* at 66-67.  However, the record also included testimony from a "retail druggist" that had tested the liquor and testified that "the percentage of

11

alcohol was about 45 by volume." *Id.* at 67. The court affirmed the judgment. *Id.* at 68.

¶23 In its response, the State extrapolates, based on these citations, that Rowe "asserts that [these cases] hold that [the] State is *required* to sample, seize, or analyze the liquor to prove its alcohol content." (Emphasis added.) We agree with Rowe that "[t]he State mischaracterizes Rowe's position concerning what evidence might be sufficient proof of ABV," and we concur with her argument that "[c]hemical testing is simply one method of reliably establishing the percentage of alcohol." While both cases included chemical testing evidence, neither case stands for the proposition that chemical testing is required or that testimony alone is insufficient.

¶24 We reiterate that chemical testing is not *required* to establish the existence of intoxicating liquor at trial. Instead, otherwise competent testimony may be sufficient to prove the identity of intoxicating liquor. The fact remains, however, that in this case, the State failed to offer sufficient testimony upon which the jury could make (or infer) such a finding.

*By the Court.*—Judgment reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.